UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CAROL HALE, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | Civil Action No: SA-08-CA-106-XR |
| ) | |
| JANET NAPOLITANO, ) | |
| SECRETARY, ) | |
| DEP'T OF HOMELAND SECURITY ) | |
| ) | |
| ) | |
| DEFENDANT. ) | |

**ORDER**

On this date the Court considered Defendant's motion for summary judgment (docket no. 24).

**BACKGROUND**

Plaintiff brings this suit alleging that she was discriminated against because of her sex in violation of Title VII of the Civil Rights Act. She also brings a retaliation claim.

Plaintiff began her employment in 1987 as a Criminal Investigator/Air Interdiction Officer. In 1997, she became a Criminal Inspector Special Agent. As a special agent, Plaintiff is responsible for all aspects of a case that she is assigned, including document gathering and preparation, and meeting with U.S. Attorneys regarding any indictments.

From the period 1998 to 2004, Hale was supervised by Bruce Simonds. Mr. Simonds states that during this time frame, he rated Plaintiff's performance as outstanding for four consecutive rating periods. He also states that in addition to performing her regular duties, Hale served as the District's Enforcement Recruiter and assisted with the Student Intern Program. Mr. Simonds further states that

1

as a result of Plaintiff's contributions to Operation Skimflick (an asset forfeiture operation arising from a pornography and money laundering investigation) and Operation Greenquest (a 9-11 investigation), Hale received an outstanding performance rating, a cash bonus of $1,500, and a letters of appreciation from two assistant commissioners.

In April 2004, Jesus Ramos became Plaintiff's supervisor. In October 2004, Plaintiff filed an EEO complaint alleging that she was being subjected to a hostile work environment and sexual harassment by Ramos. After this complaint was made Plaintiff was reassigned from Ramos to Edward Povlish.

On December 13, 2004, Hale and the Department of Homeland Security entered into a Negotiated Settlement Agreement. In exchange for Hale's withdrawal of her EEO complaint and releasing any complaints that she had previously brought, the Department agreed to allow Hale to serve as primary case agent for the asset forfeiture investigation of Operation Skimflick.

In October 2005, Plaintiff contacted the EEO office and filed an informal complaint alleging that the Department had breached the Negotiated Settlement Agreement. Her formal complaint was filed in December 2005. In this complaint Plaintiff alleged: (1) from March 2005 through November 1, 2005, Jesus Ramos and others were undermining Plaintiff's position as Primary Case Agent; (2) she was not appointed Acting Group Supervisor; (3) she was denied a promotion in October 2005 to GS-14; (4) her responsibilities were reassigned to others; and (5) Ramos continued to engage in "filthy, sexist and obscene language and jokes in the workplace." In an amended complaint Plaintiff also alleged that from January 2006 through March 2006, the following occurred: (1) Acting AIRG Supervisor Robert Butler began to undermine her by contacting Assistant U.S. Attorneys about her cases without her knowledge; (2) a congressional inquiry project she was working on was reassigned

without her knowledge; (3) she was recommended to receive either a monetary or extra leave award for work performed in 2005, but the award was not given to her; and (4) her recruitment duties were removed. The complaint was further amended at a later date and Plaintiff made the following additional allegations: (1) From January 2006 through March 2006 her work had been scrutinized; (2) On April 19, 2006, she received a verbal and written counseling[1]; (3) On April 19, 2006, her work on Operation Skimflick was audited[2] and she was later required to transfer her Operation Skimflick responsibilities to SA Robert Butler; and (4) On May 23, 2006, she was involuntarily transferred to the Fraud Group where she was assigned to work with less senior agents with fewer duties and less desirable working conditions.[3]

From May 8 through May 11, 2007, a hearing was held before an Administrative Judge regarding Plaintiff's sex discrimination and retaliation claims. The Administrative Judge rejected all of Plaintiff's claims.[4] Plaintiff filed this suit on February 11, 2008.

On December 10, 2008, Jesus Ramos sent an email to various individuals (including Plaintiff) titled "Great gift for the holiday season." The email contained a picture of a remote control device with buttons labeled beer, sex, food, nagging, moaning, whining, remove clothes, cook, clean, leave,

---

[1]The written counseling states that on June 27, 2005, SAC Pena had previously indicated that there were environmental problems associated with a property located at 434 Fannin, that a request had been made to the U.S. Attorney to dismiss the final forfeiture proceedings because the government did not want to incur any costs associated with cleanup costs, and that despite this knowledge Plaintiff initiated actions to sell the property without her supervisor's approval.

[2]Plaintiff alleges that the audit was conducted by a personal friend of Jesus Ramos.

[3]The Department responds that Plaintiff and nine other agents were rotated to a new investigative group.

[4]The copy of the decision does not indicate the date the findings of fact and conclusions of law were made.

etc.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)). "Where the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." *Nichols*, 495 F.3d at 188 (*quoting Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. 2548). In reviewing the motion, we "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

### B. Title VII Sex Discrimination Claim

Under Title VII it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may prove Title VII discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007). Plaintiff has not

4

provided direct evidence of discrimination; therefore, her Title VII claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden-shifting evidentiary framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff can establish a prima facie case of discrimination by establishing "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, [ ] that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotations omitted). If the plaintiff successfully establishes a prima facie case of discrimination, the burden shifts to the defendant to set forth its legitimate, non-discriminatory reason for its decision. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). "The plaintiff may still avoid summary judgment if she demonstrates a genuine issue of material fact whether the legitimate reasons proffered by the defendant are not its true reasons, but instead are a pretext for discrimination." *Id.*

### C. Title VII Retaliation Claim

With regard to Plaintiff's Title VII retaliation claim, retaliation claims are also subject to the *McDonnell Douglas* burden-shifting standard. "A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). If a prima facie case is shown, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action; to overcome this, the employee must offer sufficient evidence to create a genuine issue of fact that the employer's proffered reason is a pretext for

5

discrimination. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

The Supreme Court recently clarified the requirements for the second element of an employee's prima facie case of retaliation. In *Burlington Northern*, the Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68, 126 S.Ct. 2405 (internal quotation marks omitted).

Analyzing *Burlington Northern*, the Fifth Circuit in *Holloway v. Department of Veterans Affairs*, 2009 WL 270175 (5th Cir. 2009) has stated the following:

> The [Supreme] Court explained that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm," *id.* at 67, 126 S.Ct. 2405, and noted that it "speak[s] of material adversity because ... it is important to separate significant from trivial harms," *id.* at 68, 126 S.Ct. 2405. In other words, it explained, "Title VII ... does not set forth 'a general civility code for the American workplace.' " *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Notably, the Court cautioned that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*
> 
> Holloway's sole remaining allegation is that Warner's statement to two of Holloway's co-workers that Holloway was "creating problems by filing EEO complaints" rises to the level of an adverse employment action under the standard enunciated in *Burlington Northern*. Since *Burlington Northern*, this court and others have considered various factors that weigh against a finding of "material adversity." Among these, we have explained that when a supervisor makes a challenged comment not to the plaintiff-employee but to his co-workers, the comment's hearsay nature "militates against a finding of materiality." *Smith v. Harvey*, 265 Fed. Appx. 197, 201 (5th Cir. 2008) (per curiam) (unpublished) (citing *Thomas v. iStar Fin., Inc.*, 438 F. Supp.2d 348, 366 (S.D.N.Y. 2006)). The fact that the supervisor made the comment on only one occasion and that no adverse consequences followed therefrom further weighs against a finding of material adversity. *Id.* Although we recognize that this unpublished decision does not bind us, we find it instructive and agree with its reasoning.
> 
> Moreover, a supervisor's mention, or even criticism, of an employee's EEO

complaints does not itself constitute such "material adversity" that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington Northern*, 548 U.S. at 68, 126 S. Ct. 2405. For example, in *Jones v. Johanns*, 264 Fed. Appx. 463 (6th Cir. 2007), the Sixth Circuit held that a supervisor's letter to the plaintiff warning him to stop discussing his EEO complaints during business hours and threatening "official disciplinary action" if he failed to stop did not, "as a matter of law, constitute materially adverse actions," *id.* at 469. Indeed, courts have even held that a supervisor's statements to a plaintiff's co-workers that he would "get rid of" the plaintiff because he was "creating problems," *Thomas*, 438 F. Supp.2d at 366, and "[b]admouthing or being mean to an employee within the workplace," *Roldan v. Chertoff*, No. 04CV2515, 2006 WL 4632503, at *12 (S.D. Cal. Oct. 19, 2006), are not materially adverse actions capable of sustaining a retaliation claim.

*Holloway*, 2009 WL 270175 at *3.

### D. Defendant's Motion for Summary Judgment

Defendant argues that summary judgment is proper because: (1) Plaintiff merely bases her sex discrimination and retaliation claims upon speculation and conjecture; (2) Plaintiff cannot establish that she was better qualified than the individual selected for the October 2005 position that she was denied; (3) Defendant had a legitimate, non-discriminatory and non-retaliatory reason for not promoting Plaintiff; and (4) All of Plaintiff's other claims do not rise to the level of a "materially adverse employment action." With regard to Plaintiff's allegation that she was subjected to a hostile work environment, Defendant argues that her allegations fail to establish that the acts were either "severe or pervasive."

### E. Denial of the October 2005 Position

All parties agree that denial of this position was a materially adverse employment act. The question is whether there is a genuine issue as to any material fact regarding whether Plaintiff was denied the position in retaliation for her previous EEOC filing or because of her sex.

7

Defendant argues that a male, Leonard Jones, was selected for the GS-14 Group Supervisor position because there was an agency priority to move supervisors with significant border service off the border. Unlike Plaintiff who was employed as a GS-13, Mr. Jones was already a GS-14 Group Supervisor in Laredo and merely requested a lateral transfer. Defendant argues that use of this criteria was neutral as to gender and prior EEO activity. Had Defendant stopped there, it would appear that summary judgment would be appropriate. *See Tillman v. Southern Wood Preserving of Hattiesburg, Inc.*, 250 Fed. Appx. 622, 625 (5th Cir. 2007) ("Southern has proffered a legitimate, nondiscriminatory explanation for hiring Cooley over Tillman. Southern contends that differences in the two men's level of experience justified Southern's decision to hire Cooley. At this third stage in the burden shifting, Tillman has two methods available to rebut Southern's proffered reason for failing to promote him, which would again create an issue of fact as to discrimination: (1) Tillman could show that Southern's proffered explanation is false or unworthy of credence; or (2) Tillman could try to prove that he is clearly better qualified than the person selected for the position. Based on the summary judgment evidence, there is no issue of material fact remaining as to Southern's nondiscriminatory justification. Tillman has failed to provide any evidence as to either method of rebuttal.").

However, in this case Defendant also acknowledges that it considered the ability to get along with others as a legitimate consideration in the selection of the supervisory position. According to Defendant, "San Antonio management had received several reports that Plaintiff had difficulty getting along with fellow employees, supervisors, contractors and recruits." In response to this allegation Plaintiff has produced affidavits from various employees and government agents stating that Plaintiff performed her job well and in a cooperative manner. Accordingly, Plaintiff argues that a material fact

8

issue exists that warrants denial of the Defendant's summary judgment motion. Plaintiff also argues that the articulated reason for awarding the position to Jones (i.e. agency priority to move supervisors from the border) is either inconsistent or unworthy of belief.[5] Plaintiff proffers a copy of a Tri-Bureau Merit Promotion Plan. According to that Plan, "employees entitled to and eligible for priority consideration or placement will be referred to the selecting official prior to other candidates, and if possible, before a vacancy announcement is issued." Accordingly, Plaintiff argues that according to the Plan, had Defendant's articulated reason been true, there would have been no reason for Defendant to "fill the open Group Supervisor position ... from either the list of eligible GS-13 promotion candidates, or the list of GS-14 lateral reassignment candidates." When an employer offers inconsistent explanations for its employment decision, a material fact issue may be created that warrants denial of summary judgment. *See Staten v. New Palace Casino, LLC*., 187 Fed. Appx. 350 (5th Cir. 2006).

The contested claim that Plaintiff failed to get along with others is especially significant given that only ten months had elapsed between the date that Plaintiff and the Department of Homeland Security entered into a Negotiated Settlement Agreement and the denial of promotion.[6] Also

---

[5]Plaintiff does not argue that the mixed-motive theory is applicable in this case. Under that theory a plaintiff must show that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-94 (2003). If the plaintiff pursues a mixed-motive theory, and shows that the plaintiff's protected characteristic or conduct was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the discriminatory animus. *See Rachid*, 376 F.3d at 312.

[6]"Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin*., 110 F.3d 1180, 1188 (5th Cir. 1997). The Supreme Court has noted that "cases that accept mere temporal proximity ... as sufficient evidence of causality to

9

significant is the affidavit of Bruce Simonds, Plaintiff's former supervisor, who contradicts the Defendant's characterization of Plaintiff's qualifications.

With regard to Plaintiff's retaliation claim regarding the October 2005 position, Defendant's motion for summary judgment is denied inasmuch as there is a genuine issue as to a material fact regarding whether Plaintiff was denied the position in retaliation for her previous EEOC filing. However, Plaintiff fails to establish that there is any genuine issue as to any material fact regarding her sex discrimination claim. Plaintiff only proffers her subjective belief that she was denied this promotion because of her sex. Accordingly, summary judgment is granted in favor of the Defendant regarding Plaintiff's sex discrimination claim as to the October 2005 denial of a promotion.

### F. Hostile Work Environment Claim

To prevail on a Title VII claim based on a hostile work environment, an employee must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)[7].

---

establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Although the Fifth Circuit has found temporal proximity of up to ten months insufficient, by itself, to show a causal link, *see, Harvey v. Stringer*, 113 Fed. App'x 629, 631 (5th Cir. 2004), as noted above, Plaintiff is not relying upon temporal proximity alone.

[7] "[W]here the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

For harassment on the basis of sex to affect a term, condition, or privilege of employment it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Ramsey*, 286 F.3d at 268. A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Courts in this circuit "determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance.'" *Turner*, 476 F.3d at 347 (ellipsis in original) (*quoting Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

As indicated above, Plaintiff alleges the following in support of her hostile work environment claim: (1) from March 2005 through November 1, 2005, Jesus Ramos and others were undermining Plaintiff's position as Primary Case Agent; (2) she was not appointed Acting Group Supervisor; (3) she was denied a promotion in October 2005 to GS-14; (4) her responsibilities were reassigned to others; (5) Ramos continued to engage in "filthy, sexist and obscene language and jokes" in the workplace; (6) from January 2006 through March 2006, Acting AIRG Supervisor Robert Butler began to undermine her by contacting Assistant U.S. Attorneys about her cases without her knowledge; (7) a congressional inquiry project she was working on was reassigned without her knowledge; (8) she was recommended to receive either a monetary or extra leave award for work performed in 2005, but the award was not given to her; (9) her recruitment duties were removed; (10) from January 2006 through March 2006 her work had been scrutinized; (11) on April 19, 2006, she received a verbal and written counseling; (12) on April 19, 2006, her work on Operation Skimflick

was audited and she was later required to transfer her Operation Skimflick responsibilities to SA Robert Butler; and (13) on May 23, 2006, she was involuntarily transferred to the Fraud Group where she was assigned to work with less senior agents with fewer duties and less desirable working conditions.

Drawing all reasonable inferences in Plaintiff's favor, the totality of the circumstances presented does not evidence a level of harassment on the basis of sex that affected a term, condition, or privilege of employment. The incidents complained of by Plaintiff occurred over several years, were not severe, were not physically threatening or humiliating, and there is no evidence that the harassment interfered with Plaintiff's work performance. Indeed, Plaintiff claims that she was qualified and ready to be promoted. While the Court does not doubt that Plaintiff found the conduct subjectively offensive, the conduct does not rise to the level necessary to establish a hostile work environment claim. *See Garza v. Laredo Independent School Dist.*, 309 Fed. Appx. 806, 810 (5th Cir. 2009). Defendant's motion for summary judgment on this claim is GRANTED.

**G.     Sex Discrimination Claims Other than the Denial of the October 2005 Position**

Defendant seeks summary judgment on all of the remaining Title VII sex discrimination allegations arguing that they do not rise to the level of an "adverse employment action." In order to establish a prima facie case of discrimination in a disparate treatment case, a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. *Jones v. Wal-Mart Stores Inc.*, 306 Fed. Appx. 81, (5th Cir. 2009). The Fifth Circuit has consistently limited "adverse employment action[s]" in the Title VII context to acts which effect compensation, duties, and benefits. *See, e.g., Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (in Title VII

discrimination context; "an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.").[8]

It is unclear whether Plaintiff's allegation that she was not appointed Acting Group Supervisor rises to the level of an "adverse employment action." The Court is unsure whether the acting appointment would have afforded Plaintiff a pay raise or would have afforded her a better opportunity to secure the permanent promotion. The Court is also uncertain about Plaintiff's allegation that she was involuntarily transferred to the Fraud Group in May 2006, where she was assigned to work with less senior agents with fewer duties and less desirable working conditions. Although that appears to be a lateral transfer in terms of pay, Plaintiff alludes that the transfer hinders her future promotional opportunities. Plaintiff's allegation that she was recommended to receive either a monetary or extra leave award for work performed in 2005, but the award was not given to her does rise to the level of an "adverse employment action." With regard to these allegations, Plaintiff has raised a fact issue regarding whether these are "adverse employment actions." Nevertheless, Plaintiff fails to establish that there is any genuine issue as to any material fact regarding whether she was discriminated against because of her sex. Plaintiff only proffers her subjective belief that she was denied the acting supervisor position, denied the 2005 performance award, or transferred to the fraud group because

---

[8]The Fifth Circuit has acknowledged that for retaliation claims the standard may be different. *McKay v. Johanns*, 265 Fed. Appx. 267, 269 (5th Cir. 2008) ("It is not entirely clear that this Circuit's formulations of the ultimate employment decision standard comports with the Supreme Court's characterization of the Title VII standard in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2411-12, 165 L.Ed.2d 345 (2006) ( ... words in the substantive provisions of Title VII, such as "hire," "discharge," "compensation, terms, conditions, or privileges of employment" limit the scope of the provision to actions that affect employment or alter the conditions of the workplace))."

of her sex.  Accordingly, Defendant's motion for summary judgment is GRANTED.[9]

All of the remaining allegations fall short of meeting the Fifth Circuit's definition of an "adverse employment action."  With regard to the remaining allegations, Defendant's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED, in part and DENIED, in part.  All of Plaintiff sex discrimination claims are dismissed.  Plaintiff's Title VII retaliation claim remains pending.

SIGNED this 28 day of May, 2009.

_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE

---

[9]The granting of summary judgment on the sex discrimination claim does not in any manner affect whether Plaintiff may or may not argue that these were "materially adverse actions" to support her retaliation claim.